Jewett *v.* Dringer.

HUGH JEWETT, receiver of the Erie Railway Company,

*v.*

SIGMUND DRINGER.

1. The court may continue an injunction pending an appeal from a decree of dismissal.

2. A stay should be granted when an enforcement of the decree, pending an appeal, will render it impossible to set the appellant right again if he is successful in his appeal; but if a stay is not necessary to his protection, and will seriously prejudice his adversary, it should be denied.

3. A stay may be refused on security being given, when adequate protection can be given in that mode.

On motion to discontinue injunction pending an appeal from dismissal of bill.

*Mr. Cortlandt Parker*, for motion.

*Mr. S. Tuttle* and *Mr. Thomas N. McCarter, contra.*

THE VICE-CHANCELLOR.

This action was brought to obtain redress for certain frauds alleged to have been committed by the defendant against the complainant. The bill charged that the defendant had, under the pretext of purchases, fraudulently obtained a large amount of property belonging to the complainant, as the receiver of the Erie Railway Company. The object of the suit was to invalidate the defendant's title and secure the restoration of the property, or compensation for it. The proofs produced on the hearing failed, in my opinion, to establish any of the frauds alleged, and a dismissal of the bill was decreed. On filing the bill an injunction was granted forbidding the sale of any of the property in controversy, and, on a subsequent allegation that the injunction had been violated, a receiver was appointed to

take charge of the property. The bill having been dismissed and an appeal having been taken at once, the complainant now applies for an order continuing the injunction until the determination of his appeal.

The power of the court to make the order applied for seems to be so well established as to be no longer a proper subject of debate in this court. *Chegary* v. *Scofield*, 1 *Hal. Ch.* 529; *Ryerson* v. *Boorman*, 3 *Hal. Ch.* 640; *Schenck* v. *Conover*, 2 *Beas.* 32. While, in the case first cited, it is admitted there is a plain distinction between a decree which grants affirmative relief, or which creates or gives a right to do, or to enjoy, or to have something which, without the decree, could not be done, or had, or enjoyed, and a decree which merely leaves the parties in the condition in which it found them when its aid was first invoked, or which simply relieves a party from a restraint put upon him by the court for the protection of his adversary, still the power of the court to act in either case is clearly asserted. The power of the court to grant a stay in this case, provided proper reasons for its exercise have been shown, I think, cannot be doubted.

Such applications are always addressed to the sound discretion of the court. And while it is quite manifest this power is indispensable to an efficacious administration of justice, yet it is also quite obvious, unless it is exercised with the utmost caution and discrimination, it may be made the instrument of wrong and ruin. Its exercise must generally be attended with great perplexity. This case presents a striking example of the difficulties besetting its exercise.

The complainant, on the hearing, failed, in the opinion of the court, to prove fraud; the claim he set up to the property in controversy has been rejected, and the defendant's right to it has been sustained. His title has been vindicated by the judgment of this court. It is the constitutional right of every citizen of this state to have the possession and enjoyment of his property. The courts cannot abridge or annul this right. On the complainant's sworn allegation that the

defendant had obtained this property of him by fraud, and that there was danger of its loss, the court took possession of it, in order that restoration might be made, if the complainant established the truth of his charges.   He has failed, and the court having pronounced a judgment of dismissal against him, it would seem, according to the lowest notions of justice, that the court should unloose its grasp and return the property at once.   On the other hand, it is clear the judgment of this court is not an unimpeachable finality; the complainant has an undoubted right to appeal, and to have the sentence of this tribunal reviewed by the court of last resort.   His appeal opens the question of title, and must keep it open until the judgment of this court is either affirmed or reversed.   The good faith of the appeal is not questioned.   While I am entirely satisfied with my judgment, and am sure it is the best it was possible for me to reach, still, I am bound to say, the path of duty was not so perfectly clear, on all branches of the case, that it was impossible to make a mistake.   With no distrust whatever of the correctness of my conclusion, yet I must confess to a feeling of satisfaction that it is to be reviewed.   The motives which prompt human action cannot always be discerned with certainty; it is not always easy to distinguish with precision the line separating innocence from guilt; and sometimes fraud simulates honesty so closely as to deceive a mind anxious to detect it.   After the most searching scrutiny I was able to make, I have been compelled to declare none of the frauds charged were so clearly proved that a decree in favor of the complainant would be an act of justice.   But some branches of the case are not so entirely free from all suspicion of fraud as to render it entirely certain that other and keener eyes than mine may not be able to see what was not perceptible to me.   All judicial history demonstrates the importance and value of the right of appeal.   No human tribunal is infallible.   Justice delights in the correction of error as well as the redress of wrong.   Where there is the slightest reason for doubt there is reason for giving protec-

Jewett *v.* Dringer.

tion to the dissatisfied suitor who appeals promptly and prosecutes his appeal with diligence. To refuse protection in some cases would be, practically, a deprivation of the right of appeal.

The eminent jurist who decided *Schenck* v. *Conover, ubi sup.,* held, that there was strong reason for staying the arm of the law whenever it appeared it would be impossible to set the appellant right again if he was successful in his appeal, but when it appeared a stay was not necessary to his protection, and would prejudice his adversary, then the enforcement of the decree ought not to be arrested. Judgments for a sum in the aggregate exceeding $27,000, it was admitted on the argument, have recently been recovered against the defendant; the property, on being restored to him, will at once be liable to seizure and sale under these judgments. They may, and most probably will, absorb the whole of it. If the property is placed beyond the complainant's reach, success in his appeal would be an empty victory. To vindicate his title after the property had been appropriated, under legal forms, to the payment of another man's debt, would seem more like a mockery of justice than administering it. While suing for justice, he would be stripped of his property, because the court refused him the protection it had the power to give. Against a result so disastrous and reproachful to the administration of justice, even though it may seem very remote, the complainant is entitled to protection. The injunction will be continued for the present, but the defendant shall be at liberty, at any time during the pendency of the appeal, to have it dissolved and the property restored to him, on giving a bond to the complainant in the sum of $20,000, with sufficient surety, conditioned that if complainant is successful on the appeal he will pay him any sum he may recover under or equal to the sum named in the bond.